**RETIREMENT FUND OF THE FUR MANUFACTURING INDUSTRY, by its Trustees, Theofanis DARDAGANIS, Jerry Kay, Arthur Kotoros, Cheryl Lamm, William Molina, Paul Raphael, and Sidney Reiss, Plaintiffs,**

v.

**GETTO & GETTO, INC., Irving Getto and Harold Getto, Defendants.**

**No. 88 Civ. 3121 (MBM).**

United States District Court, S.D. New York.

June 1, 1989.

---

Ronald L. Castle, V. Daniel Palumbo and Fred S. Sommer, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., and Christopher E. O'Brien, Gaston & Snow, New York City, for plaintiffs.

Solaman G. Lippman and Richard H. Semsker, Lippman & Associates, Washington, D.C., and Michael M. Premisler, Carle Place, N.Y., for defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiffs Retirement Fund of the Fur Manufacturing Industry (the "Fund") and its trustees filed this lawsuit to collect withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended by* the Multi-em-

ployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* (1982 & Supp. IV 1986) Plaintiffs allege that defendant Getto & Getto, Inc. ("Getto & Getto") withdrew from the Fund in 1984. In January 1988, the Fund assessed $27,799.63 in withdrawal liability against Getto & Getto. Withdrawal liability is the amount the employer is required to pay to continue funding its proportionate share of the Fund's unfunded vested benefits. 29 U.S.C. §§ 1381, 1389. Getto & Getto refused to pay. Plaintiffs now move for summary judgment contending that both Getto & Getto and its sole shareholders, defendants' Irving and Harold Getto, are liable. Plaintiffs seek also an award of interest, liquidated damages, attorney's fees and costs. Defendants cross-move for summary judgment, arguing that their withdrawal liability was miscalculated and that, in fact, they do not owe the Fund anything. For the reasons set out below, I grant plaintiffs' motion. Defendants' motion is denied for failure to exhaust administrative remedies.

Getto & Getto, a small manufacturer of fur garments located in New York's Chelsea area, was incorporated in 1954. Irving and Harold Getto are its sole shareholders. In 1983, the Gettos decided to dissolve the corporation because of decreased profits from foreign competition. (H. Getto Dep. at 16) By December 31, 1983, the Gettos had terminated all employees and begun liquidating their inventory. (H. Getto Dep. at 18) According to Harold Getto, no raw materials were purchased in 1984. (H. Getto Dep. at 17) However, as Getto & Getto's contribution reports to the Fund show, Getto & Getto retained its full complement of six employees through February 15, 1984; indeed, in January 1984, sales totalled more than $98,000, fully 87% of sales in January 1983. (Plaintiff's Rule 3(g) statement, ¶¶ 1, 2) Defendants counter that these activities involved only taking in contracting work from other firms. (Defendant's Supplemental Rule 3(g) statement, ¶ 5) By April 1, 1984, the Gettos were employed by other manufacturers. At that time, the Gettos placed approxi-

mately $11,000 in an escrow account for any contingent liabilities that might arise.

In a notice and demand dated January 8, 1988, the Fund notified Getto & Getto pursuant to 29 U.S.C. § 1399(b)(1) that it owed $27,799.63 in withdrawal liability. (Amended Complaint at ¶ 13) The demand set forth a schedule of 19 quarterly payments of $1,744.28, plus a final payment of $611.07. On April 6, 1988, Getto & Getto filed a request for review of the demand by the Fund's trustees as permitted by 29 U.S.C. § 1399(b)(2). Following the trustees' denial of its request for review, Getto & Getto initiated arbitration on August 30, 1988 pursuant to 29 U.S.C. § 1401. That arbitration has proceeded apace. However, in the meantime, defendants have refused to make withdrawal payments.

■ As plaintiffs rightly note, the MPPAA specifically mandates that employers promptly pay their withdrawal obligations during review and arbitration. *T.I. M.E.–DC, Inc. v. Management–Labor Welfare & Pension Funds,* 756 F.2d 939, 946 (2d Cir.1985). Section 1399(c)(2) provides:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand *notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.*

29 U.S.C. § 1399(c)(2) (emphasis added). Similarly, Section 1401(d) provides:

> Payments shall be made by an employer in accordance with the determination made under this part *until the arbitrator issues a final decision* with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.

29 U.S.C. § 1401(d) (emphasis added). Thus, whether or not defendants have a meritorious argument to defeat liability, they are obligated to make these interim payments. *See generally ILGWU Nat'l Retirement Fund v. Levy Bros. Frocks,*

846 F.2d 879, 880–882 (2d Cir.1988) (describing MPPAA's statutory framework).

Defendants do not challenge their liability for these interim payments. Rather, they seek to have this court, rather than the arbitrator, decide whether in fact they have a meritorious defense to plaintiffs' claim. Defendants argue that Getto & Getto withdrew in 1983, rather than 1984. This difference is important because MPPAA contains a *de minimis* rule reducing withdrawal liability by $50,000. 29 U.S.C. § 1389(a). The *de minimis* rule is inapplicable, however, if withdrawal occurs in a year when "substantially all employers" withdraw from a plan. 29 U.S.C. § 1389(c)(1). Both parties agree that a "mass" withdrawal occurred in 1984, the year of a strike in the fur industry. Thus, if Getto & Getto actually withdrew in 1984, as plaintiffs contend, they would be liable for $27,799.63 despite the $50,000 *de minimis* rule. However, if the firm withdrew in 1983, it would escape liability because of the *de minimis* rule.

It is not often that a party which requests arbitration turns around and seeks judicial intervention, but that is precisely what defendants request here. In order to do so, however, defendants must navigate the narrow opening through which this Circuit allows certain MPPAA cases to escape the exhaustion-of-administrative-remedies requirement despite Congress' explicit mandate that all such claims be arbitrated. Although MPPAA's arbitration provisions do not bar federal jurisdiction absolutely, but rather require exhaustion of administrative remedies, *T.I.M.E.–DC*, 756 F.2d at 945, the Second Circuit, speaking through then-Chief Judge Feinberg, has limited judicial review before exhaustion to "rare" cases. *Levy Bros. Frocks*, 846 F.2d at 886. Judge Feinberg noted that *T.I.M.E.–DC*, a case where the Circuit dispensed with the exhaustion requirement, involved a special situation where the issues presented were solely questions of statutory construction regarding § 1415, a provision "outside the scope of those issues that Congress directed to the arbitrator." *Levy Bros. Frocks*, 846 F.2d at 886 (quoting *T.I.M.E.–DC*, 756 F.2d at 945). In contrast, *Levy Bros.*

*Frocks* involved mostly factual questions regarding whether the employer was bound by a contract to contribute to the fund. Moreover, the only statutory issues involved §§ 1381 through 1399, provisions which Judge Feinberg felt Congress intended arbitrators to interpret in the first instance. *Id.* Plaintiffs thus claim that *Levy Bros. Frocks* has completely undercut *T.I.M.E.–DC* in requiring exhaustion whenever the claims concern §§ 1381 through 1389. Because the issue here is whether defendants withdrew within the meaning of § 1389, plaintiffs argue, *Levy Bros. Frocks* mandates exhaustion of administrative remedies.

Defendants note that the Circuit has recently refused to require exhaustion of administrative remedies where the question involved interpretation of §§ 1381 through 1399. However, that opinion, *Park South Hotel v. New York Hotel Trades Council*, 851 F.2d 578 (2d Cir.), *cert. denied*, ―― U.S. ――, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988), far from undercutting *Levy Bros. Frocks*'s holding, went out of its way to discuss the peculiar circumstances of that case which the panel believed warranted dispensing with exhaustion, even though neither party briefed the subject. The Court noted the following special factors: (1) the case involved pure statutory interpretation concerning whether sale of a partnership interest constituted a "withdrawal" of the partnership from a plan; (2) the parties agreed that arbitration was not required; (3) the suit was filed before the time for invoking arbitration had expired; and (4) judicial economy would not be served by remanding the case at such a late stage. *Park South Hotel*, 851 F.2d at 582. Thus, *Levy Bros. Frocks* stands at most for the proposition that, when §§ 1381 through 1389 are at issue, although arbitration is strongly favored it may not be required if compelling reasons exist for judicial intervention.

*T.I.M.E.–DC*, *Levy Bros. Frocks* and *Park South Hotel* define a narrow exception to the exhaustion-of-administrative-remedies requirement where the predominant issues to be addressed involve statu-

tory interpretation, rather than resolution of factual questions, and other equitable factors strongly support judicial intervention. If the statutory interpretation concerns §§ 1381 through 1389, there is an added presumption in favor of arbitration. Other courts have rejected the distinction between statutory and factual issues and instead require arbitration of all disputes under the MPPAA. *See, e.g., Mason & Dixon Tank Lines v. Central States Pension Fund,* 852 F.2d 156, 163–65 (6th Cir. 1988); *Teamsters Pension Trust Fund v. Allyn Transp. Co.,* 832 F.2d 502, 504–5 (9th Cir.1987); *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.,* 825 F.2d 415, 418 (D.C.Cir.1987); *Flying Tiger Line v. Teamsters Pension Fund,* 830 F.2d 1241, 1253–55 (3d Cir.1987); *Robbins v. Chipman Trucking, Inc.,* 693 F.Supp. 628, 635 (N.D.Ill.1986), *aff'd without op.,* 848 F.2d 196 (7th Cir.1988).

Here the statutory provision in question —§ 1389 (defining when an employer has withdrawn)—cuts in favor of requiring exhaustion because it is among those provisions which Congress expressly intended an arbitrator would apply before recourse to judicial interpretation. Moreover, although withdrawal liability sometimes may turn solely on statutory interpretation, particularly when there is no dispute about the relevant facts, *see Park South Hotel, supra,* this is not one of those cases devoid of factual disputes. Much as defendants would have it appear that there are no factual issues, their own papers defeat this effort. The question whether defendants ceased operations in 1983 as opposed to 1984 is fact-laden, requiring resolution of the following issues: were defendants "manufacturing" skins into finished garments in January and February or were they "contracting" to supply finished goods to others?; what is the difference between contracting and manufacturing?; and did defendants' sales in January and February constitute mere liquidation of inventory or ongoing sales from manufacturing? To be sure, there is a statutory question as well: namely, whether contracting out for piecework incident to a liquidation is consistent with the statutory requirement that withdrawal involve "permanently ceas[ing] all covered operations." But the threshold issues are factual and the parties in their papers hotly dispute the significance of defendants' January and February 1984 activities. An arbitrator will establish the factual record in this case more fully. I thus conclude that factual questions predominate. *Accord ILGWU Nat'l Retirement Fund v. Empire State Mills,* 696 F.Supp. 885 (S.D.N.Y.1988) (finding date of withdrawal a factual question requiring exhaustion).

Defendants note that other courts have ruled on the issue of the date of withdrawal. *See, e.g., Connors v. Economy Bldg. Sys., Inc.,* 651 F.Supp. 849, 853 (D.D.C. 1986); *F.H. Cobb Co. v. New York State Teamsters Conference Pension & Retirement Fund,* 584 F.Supp. 1181, 1185 (N.D. N.Y.1984); *Speckman v. Barford Chevrolet Co.,* 535 F.Supp. 488, 491 (E.D.Mo.1982); *Textile Workers Pension Fund v. Standard Dye & Finishing Co.,* 549 F.Supp. 404, 406 (S.D.N.Y.1982), *aff'd,* 725 F.2d 843 (2d Cir.1984). Those courts, however, were required to determine whether the withdrawal took place prior to the effective date of the MPPAA in order to determine whether the MPPAA along with its arbitration requirement was at all applicable. Thus, as the district court in *Connors* noted, it would have been futile for the employer to seek arbitration since it was not clear the arbitration provisions of MPPAA even applied. 651 F.Supp. at 852–53. Moreover, in two cases, *Textile Workers Pension Fund* and *Speckman,* neither party raised the issue whether an arbitrator should decide if withdrawal occurred before the effective date of the MPPAA.

Finally, there are no equities favoring judicial action now. To the contrary, defendants ask this court essentially to halt the arbitration currently in process and decide the issues raised. I decline defendants' invitation to usurp the province of the arbitrator. In sum, that the MPPAA provision in question is § 1389, that factual questions abound, and that no particular cicumstance warrants my intervention, taken together, lead to the conclusion that

completion of arbitration is necessary here. Thus, defendants' motion is denied.

Because Getto & Getto has only $11,000 in an escrow account and plaintiffs seek $27,799.63 plus interest, liquidated damages, attorney's fees and costs pursuant to § 1132(g)(2), 29 U.S.C. § 1132(g)(2), plaintiffs seek to hold Getto & Getto's sole shareholders, Irving and Harold Getto, personally liable for withdrawal payments. Some courts have held that ERISA does not render corporate officers personally liable for a company's withdrawal liability unless the officers and the company are "alter egos" under traditional common law principles. *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383, 387 (2d Cir.1989) (collecting cases). The panel in *Standard Drywall, Inc., supra* at 387, expressly left open the possibility that the Second Circuit might depart from these cases and hold corporate officers personally liable.

▮ Plaintiffs do not ask this court to hold the Gettos personally liable under ERISA or to find that the Gettos are "alter egos" of Getto & Getto. Rather, they seek to hold the Gettos liable under New York state law because the Gettos took undistributed income from Getto & Getto in the last two years of the corporation's existence. The Gettos withdrew from the firm the following undistributed income (*i.e.,* retained earnings): $39,433.41 in 1983 and $30,499.55 in 1984. (H. Getto Dep. at 23–26, 30–33; Exhs. 2–6) Although there is a suggestion in defendants' papers that these disbursements were really wages, the income tax returns submitted reveal and Harold Getto, in his deposition, confirms that they were taking undistributed income from the firm. *See* H. Getto Dep. at 24 ("[I]n 1983 we needed some money to live on and our salaries were not adequate, so we decided that we wanted a raise and our accountant said, 'How could you take a raise when you're losing money? Take your undistributed income and distribute some of it,' and that's what we did.") Thus, there is no material fact in dispute on this question. Under N.Y.Bus.Corp.Law § 1005, shareholders to whom the remaining assets of a dissolved corporation are distributed hold those assets in trust for the benefit of the corporation's creditors. Accordingly, the Gettos are jointly and severally liable to the Fund to the extent of the corporate property they have received. *Plastic Contact Lens Co. v. Frontier of Northeast, Inc.*, 324 F.Supp. 213, 220 (W.D. N.Y.1969), *aff'd,* 441 F.2d 67 (2d Cir.), *cert. denied,* 404 U.S. 881, 92 S.Ct. 196, 30 L.Ed. 2d 162 (1971); *Rodgers v. Logan,* 121 A.D.2d 250, 253, 503 N.Y.S.2d 36, 39 (1st Dep't 1986); *Sherill Hardwood Lumber Co. v. New York Bottle Box Co.*, 118 Misc. 636, 638, 195 N.Y.S. 22, 23 (N.Y.Sup.Ct. 1922). Moreover, the Gettos are also liable for attorney's fees, costs, liquidated damages, and interest as provided in 29 U.S.C. § 1132(g)(2) if plaintiffs prevail on this claim, even though it is a state law claim. *Local 445 Welfare Fund v. Wein,* 855 F.2d 62, 64 (2d Cir.1988). *See also O'Hare v. General Marine Transp. Corp.*, 740 F.2d 160, 171 (2d Cir.1984) (noting that reasonable attorney's fees are mandatory), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).

The Gettos mount three challenges to personal liability: that § 1005 is preempted by ERISA; that § 1005 requires a finding of fraudulent intent; and that the debts at issue here did not exist at the time of dissolution and therefore § 1005 does not apply.

▮ Regarding preemption, case law distinguishes between state laws which "relate to" employee benefit plans and those that have only a "tenuous, remote, or peripheral" impact. *See generally Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 145–47 (2d Cir.1989) (discussing cases). Only the former are preempted. Recently, the New York Court of Appeals has found that a statute similar to § 1005, N.Y.Bus. Corp.Law § 630 which imposes personal liability on the ten largest shareholders of closely held corporations for the payment of wages including pension benefits, is not preempted by ERISA. *Sasso v. Vachris,* 66 N.Y.2d 28, 34, 494 N.Y.S.2d 856, 860, 484 N.E.2d 1359, 1363 (1985). In an exhaustive opinion, the Court noted that "the only effect of section 630 on employee ben-

efit plans is to give plaintiffs a cause of action to recover payments the corporation was already obligated to provide." 494 N.Y.S.2d at 859, 484 N.E.2d at 1362. Moreover, when Congress added remedies for delinquent contributions in 1980, it specifically recognized the importance of state law remedies as an alternative enforcement mechanism. 494 N.Y.S.2d at 861, n. 4, 484 N.E.2d at 1364 n. 4. Like § 630, § 1005 provides a mechanism whereby corporate officers who have received corporate property may be required to disgorge those payments to cover the corporation's withdrawal liability. Although the Second Circuit has not explicitly passed on whether state law remedies for delinquent payments are preempted, *but see Local 445 Welfare Fund,* 855 F.2d at 64 (confirming judgment against shareholders for recovery of delinquent contributions to pension plans granted under N.Y.Debtor & Creditor Law § 274), the Third Circuit has dismissed summarily an argument that a state law provision holding corporate officers liable for delinquent payments was preempted by ERISA. *Carpenters Health & Welfare Fund v. Ken R. Ambrose, Inc.,* 727 F.2d 279, 282 n. 5 (3d Cir.1983). I find that § 1005 is not preempted by ERISA.

■ The Gettos argue also that personal liability would be proper only if they were found to have defrauded the corporation's creditors. Nothing in the language of § 1005 or in the New York cases interpreting it suggests that plaintiffs are required to show fraud. To the contrary, § 1005 would seem to permit recovery of corporate assets from stockholders regardless of the motive for distribution. *See generally Rodgers,* 503 N.Y.S.2d 36.

■ The Gettos' last argument, that the Fund's claim for withdrawal liability did not exist when the corporation was dissolved, must be rejected as well. Even though the corporation was not obliged to begin making withdrawal liability payments until after the amount of its liability was calculated in 1988, the debt was incurred at the point when Getto & Getto withdrew, which both sides agree occurred when the corporation was formally dissolved. *See Amalgamated Ins. Fund v. William B. Kessler, Inc.,* 55 B.R. 735, 738 (S.D.N.Y.1985) (withdrawal liability "accrued" over the employer's participation in the plan, not on the calculation date of the withdrawal liability). In any event, even if the debt could be characterized as "contingent," the term "liability" in § 1005 has been held to include contingent claims. *Rodgers,* 503 N.Y.S.2d at 39. *See also United States v. Oscar Frommel & Bro.,* 50 F.2d 73, 74 (2d Cir.), *cert. denied,* 284 U.S. 647, 52 S.Ct. 25, 76 L.Ed. 549 (1931).

As there is no material fact in dispute concerning whether the Gettos were in fact receiving undistributed income from Getto & Getto, *see, supra,* p. 10, plaintiffs' motion for summary judgment holding the Gettos personally liable up to $69,932.96 for withdrawal payments as well as costs, interest, attorney's fees and liquidated damages as provided in 29 U.S.C. § 1132(g)(2) is granted. Plaintiffs' motion for summary judgment against Getto & Getto is also granted. As I stated earlier, defendants' motion for summary judgment is denied for failure to exhaust administrative remedies.

I therefore direct the following:

(a) Getto & Getto shall pay $8,721.40 in overdue quarterly withdrawal liability and shall pay all future quarterly payments;

(b) Getto & Getto shall make all future quarterly payments;

(c) Harold and Irving Getto are jointly and severally liable, up to an aggregate amount of $69,932.96, for any quarterly payments of withdrawal liability to the Fund that Getto & Getto fails to make; and

(d) By June 23, 1989, plaintiffs shall file an affidavit indicating interest on the overdue quarterly payments, reasonable attorney's fees and costs for this motion. Defendants may respond to that submission by June 30, 1989.

SO ORDERED.