■ In the Matter of DOROTHY F. RODGERS et al., Respondents, v JOSHUA LOGAN, Appellant.—Order and judgment (one paper) of the Supreme Court, New York County (Ira Gammerman, J.), entered October 11, 1985, which granted petitioners' application for a permanent stay of arbitration, is reversed, on the law, and the motion to stay arbitration denied, without costs.

Respondent-appellant Joshua Logan appeals from the above order of the Supreme Court which granted the motion of petitioners-respondents, the personal representatives of the estates of Richard Rodgers and Oscar Hammerstein, for an order permanently staying arbitration. By demand, dated April 15, 1985, Logan had sought arbitration of petitioners' alleged failure to pay him royalties arising from the production of the musical play "South Pacific".

On or about July 1, 1948, Rodgers and Hammerstein, as "author", entered into a contract with Surrey Enterprises, as "manager", for the production and presentation of the play "South Pacific" for the period of time defined in the "Minimum Basic Agreement", which was incorporated by reference into the production contract. Rodgers and Hammerstein were president and secretary, respectively, of Surrey Enterprises, as well as its stockholders and directors.

On February 2, 1949, Surrey Enterprises entered into a "Director's Contract" agreement with Logan. Under that agreement Logan was engaged as the stage director of "South Pacific". This agreement provided for various payments and royalties to Logan. Paragraph 3 (a) of the agreement set forth Logan's payment for the rehearsal of the "original New York company" production of "South Pacific". Paragraph 3 (b) provided for a royalty payment to Logan from any Surrey Enterprises production of the play performed by the original company in the United States, Canada or Great Britain. Paragraphs (c) and (d) established rehearsal fees and royalty payments, respectively, for Logan's direction of any additional "first-class company" performing the musical play in any English-speaking country under Surrey Enterprises' management or authority. Finally, paragraph (e), the basis for Logan's claim to royalties in this action, provides for "[a] royalty of One Percent (1%) of the gross weekly box office receipts derived by each first-class company not directed by you performing the said play in the United States of America, Canada and Great Britain, or in any other English speaking company *[sic]*." Unlike the other provisions for payments and royalties, this paragraph did not limit the royalty payments to a production of the play by Surrey Enterprises.

In connection with the director's agreement, Logan, who was to be given book credit for the musical with Hammerstein, by a separate agreement dated February 2, 1949, expressly assigned to Rodgers and Hammerstein all rights to "all material and ideas written or furnished by me in connection with the aforesaid musical play, the copyright therein and renewals thereof, and all rights of every kind and nature therein, whether now or hereafter known, together with the full free and unrestricted right to own, use, deal in, change, adapt the said material and ideas for any and all purposes, all as you may desire, free from any claim, right, title or interest on my part, and I further confirm and acknowledge that you shall be deemed to be the sole author of said musical play and

that you may exercise all rights of authorship and ownership without consent, approval or interference by me."

On May 3, 1950, Surrey Enterprises elected to dissolve. Its certificate of dissolution was filed on July 17, 1950. Hammerstein died on August 23, 1960. Rodgers died on December 30, 1979.

On April 15, 1985, Logan served his demand for arbitration on petitioners-respondents, as successors in interest to Surrey Enterprises, claiming royalties due him under paragraph 3 (e) of the director's contract. The demand for arbitration was based on paragraph 10 of the director's contract which provided that "[a]ny and all disputes arising hereunder out of or in connection with or in relation hereto or in breach hereof, shall be subject to arbitration in New York City". In their petition for a permanent stay of arbitration, respondents argued that Surrey Enterprises was not a predecessor to respondents and that, in any case, Surrey Enterprises and its successors, if any, no longer had any right to produce the musical play. Special Term granted the petition, concluding that petitioners were not parties to Logan's agreement with Surrey Enterprises and were not shown to be successors to the dissolved corporation and that Logan had not shown that he was a creditor of Surrey Enterprises before dissolution.

At the time of the dissolution of Surrey Enterprises, General Corporation Law § 29, which is now repealed and which was a source for present Business Corporation Law § 1006 (b), provided that: "[u]pon the dissolution of a corporation * * * its corporate existence shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations * * * [and] the directors shall have full power to settle its affairs and to distribute to the persons entitled thereto the assets remaining after the payment of debts and necessary expenses."

Stock Corporation Law § 105 (8), also now repealed and also a source for Business Corporation Law § 1006 (b), similarly provided that: "[s]uch corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs".

Currently, Business Corporation Law § 1005 (a) (1), (3) state that upon dissolution the corporation continues to exist for the purpose of "winding up its affairs", which includes "paying or adequately providing for the payment of its liabilities".

Business Corporation Law § 1006 (b) states that "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution". Thus, a corporation undergoing dissolution continues to exist for the purpose of and for as long as is necessary to satisfy and provide for its debts and obligations and it may sue or be sued on these obligations until its affairs are fully adjusted. (*Matter of Milton L. Ehrlich, Inc. [Unit Frame & Floor Corp.]*, 5 NY2d 275, 279; *City of New York v New York & S. Brooklyn Ferry & Steam Transp. Co.*, 231 NY 18, 22.) Included as corporate liabilities are contractual obligations and contingent claims. (*Matter of Milton L. Ehrlich, Inc. [Unit Frame & Floor Corp.]*, *supra*, at pp 279-280; *United States v Frommel & Bro.*, 50 F2d 73, 74 [2d Cir 1931].)

Until dissolution is complete, title to the corporate assets remains in the corporation. (Business Corporation Law § 1006 [a] [1].) After dissolution, the shareholders to whom are distributed the remaining assets of the corporation are said to "hold the assets which they received, in trust for the benefit of creditors [citation omitted]." (*Plastic Contact Lens Co. v Frontier of the Northeast*, 324 F Supp 213, 220 [WDNY 1969], *affd* 441 F2d 67 [2d Cir 1971], *cert denied* 404 US 881; *see also, United States v Frommel & Bro.*, *supra*, at p 74.) As a result, the shareholders remain jointly and severally liable to existing creditors of the corporation.

In actions by a creditor to satisfy or enforce a corporate liability it has been said that a creditor must ordinarily exhaust his remedies at law by obtaining a judgment against the corporation and by the return of an execution unsatisfied. However, where it is impossible or futile to obtain such judgment, the creditor can maintain an action directly against the directors or shareholders, even though no judgment has been obtained. (*Sherill Hardwood Lbr. Co. v New York Bottle Box Co.*, 118 Misc 636, 638; *see also, United States v Frommel & Bro.*, *supra*, at p 74.) Thus, in *Sherill Hardwood Lbr. Co.*, the directors, who had dissolved the corporation without ascertaining, providing for, or paying corporate liabilities, were allowed to be added as defendants in an action for recovery of damages for breach of a contract by the defendant corporation.

Surrey Enterprises underwent dissolution more than 30 years ago, making it futile for appellant to even attempt to sue it directly on his breach of contract claim for payment of royalties due him. Accordingly, this is one of those instances

when the creditor may directly sue the trustees of the corporate assets, the shareholders, who in this case are the now-deceased Rodgers and Hammerstein. Another factor indicating the appropriateness of suing the shareholders directly is the fact that appellant apparently seeks to pierce the corporate veil, as Surrey Enterprises did not appear to have any existence separate from Rodgers and Hammerstein, who were its directors, officers and shareholders, and who formed Surrey Enterprises to produce their musical play "South Pacific". However, Rodgers and Hammerstein now being deceased, it is their personal representatives, as the successors in interest to their assets, who are the proper defendants in this breach of contract claim.

While it has been said that "[a] corporation cannot by divesting itself of all property leave remediless the holder of a contingent claim" *(United States v Frommel & Bro., supra,* at p 74), which is what appellant argues he is here, a substantial question is, nevertheless, presented as to whether our law contemplates that the obligations under a contract, including an agreement to arbitrate any contractual disputes, survive so many years after dissolution, especially when it appears in this case that at the time of dissolution no further productions of the play were even contemplated. What is clear, however, is that a valid and broad agreement to arbitrate was entered into in 1949. This being the case, "issues relating to subsequent acts which may effect a cancellation or termination of the prior contract are properly within the arbitrator's jurisdiction to decide." *(Matter of Riccardi [Modern Silver Linen Supply Co.],* 45 AD2d 191, 195-196; *see also, Matter of Vann v Kreindler, Relkin & Goldberg,* 78 AD2d 255.) Accordingly, we direct that the motion to stay arbitration be denied. Concur—Kupferman, J. P., Sandler, Ross, Carro and Wallach, JJ.