In re Euton McGREGOR, Debtor.

**Bankruptcy No. 95 B 40789 (JLG).**

United States Bankruptcy Court,
S.D. New York.

May 5, 1995.

cured by a first mortgage on four of the buildings (two of which are identified below as the "U–Ton Buildings" and two as the "Realty Buildings"), and a second mortgage on the remaining three buildings. The issues, rents and profits of the U–Ton and Realty Buildings have been assigned to Mercury to secure payment of its claim. Postpetition, without seeking leave of the court, Mercury took steps to seize the rents generated from operation at the U–Ton and Realty Buildings. Debtor immediately petitioned the court for an order pursuant to § 362 of the Code staying Mercury's actions and directing it to turn over any rents it may have received as a result of its allegedly unauthorized collection activities. Mercury was not paid any rent and consented to the entry of an order barring it from seizing the rents pending full hearing and resolution of the motion. It opposes the motion arguing that the automatic stay is not implicated because the U–Ton and Realty Buildings (and rents generated therefrom) do not constitute property of debtor's estate. For the reasons stated below, the motion is denied and the consent order is vacated.[1]

*Facts*

The underlying facts are not in dispute. On February 23, 1995, debtor filed a voluntary petition for reorganization under chapter 11 of the Code. Pursuant to §§ 1107 and 1108 of the Code, debtor has continued in possession of his business and assets as a debtor in possession. No creditors' committee has not been appointed herein.

Among debtor's assets is his 100% ownership of two New York corporations: Great Goldhead Realty Corp. ("Realty") and U–Ton Farms Inc. ("U–Ton"). Realty is the record owner of two apartment buildings located at 4006 and 4008 Paulding Avenue, Bronx, New York, respectively (the "Realty Buildings"). U–Ton is the record owner of two apartment buildings located at 3940 and 3942 Barnes Avenue, Bronx, New York, respectively (the "U–Ton Buildings").

Stanley N. Kutcher, P.C., New York City, for debtor.

Reisman, Peirez, Reisman & Calica, L.L.P., Garden City, NY, for Mercury Capital Corp.

*Memorandum Decision On Debtor's Motion To Stay Mercury Capital Corp.*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Debtor is an individual whose voluntary petition under chapter 11 of the Bankruptcy Code (the "Code") lists seven apartment buildings as his principal assets. Mercury Capital Corporation ("Mercury") claims to be owed in excess of $1 million and may be debtor's largest creditor. Its claim is se-

---

1. Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This motion is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

On or about April 13, 1989, Progressive Credit Union, Central Credit Union and Independent Credit Union (collectively, "Progressive") loaned debtor the sum of approximately $700,000. That loan is evidenced by a Mortgage Note dated April 13, 1989. *See* Mercury Objection, Ex. A.[2] Simultaneously with the execution of that note, debtor caused U–Ton and Realty to execute unconditional guarantees of his indebtedness to Progressive, with each waiving presentment for payment, protest, notice of protest and notice of non-payment. *Id.* As security for those pledges, debtor caused Realty and U–Ton to grant Progressive first mortgages on the Realty and U–Ton Buildings, respectively. *See* Mercury Objection, Ex. B. In addition to granting Progressive liens on those buildings, U–Ton and Realty assigned to Progressive "the rents, issues, and profits of the premises as further security of said indebtedness", *id.,* ¶ 13, and in doing so, granted Progressive "the right to enter upon and take possession of the premises for the purpose of collecting [the issues, rents and profits]". *Id.*

Pursuant to § 203–a of the New York Tax Law ("Tax Law"), on March 24, 1993, U–Ton and Realty were dissolved by proclamation of the New York State Secretary of State for failing to pay their franchise taxes. Since that time, no steps have been taken either to reinstate them, or to wind up their affairs. In his voluntary petition, debtor represents that his principal assets consist of his fee ownership of the Realty and U–Ton Buildings, and three other apartment buildings located in the Bronx, New York.[3] Mercury is the assignee of Progressive's rights under the note and mortgage. As of the filing date, debtor was in default under those instruments and by Mercury's count, owed it the sum of $1,082,017.82, consisting of $687,621.01 in principal, $363,337.43 in interest, and other charges of approximately $31,019.38.

On or about March 27, 1995, debtor learned that Jeffrey Meshel, an employee of Mercury, had sent a form letter dated March 24, 1995 to each tenant at the U–Ton and Realty Buildings demanding that rent otherwise payable to the landlord be sent directly to Mercury. In relevant part, the letter states as follows:

> Please be advised that the building you live in is in foreclosure. Commencing April 1, 1995 do not pay any more rent to the landlord. We are the owners of the first mortgage and are exercising our right to collect the rent. Going forward you will send your rent and make your check out to Mercury Capital, our mailing address is 41 East 42nd Street, Suite #1100, New York, N.Y. 10017.

> Again under no circumstances are you to pay rent to the landlord. If you do, you won't get credit for it.

*See* Affidavit of Stanley N. Kutcher, Esq., as counsel to debtor, sworn to on March 30, 1995, submitted in support of debtor's motion, Ex. A. Upon learning of that action, debtor moved by Order to Show Cause to stay all such collection activity and to compel Mercury to turn over any rents it may have collected. On March 31, 1995, representa-

---

**2.** "Mercury Objection" means the Objection of Mercury Capital Corp. To The Motion Of The Debtor For A Stay And Directing That All Rents Be Paid To Debtor, dated April 6, 1995.

3940 Barnes Avenue, Bronx, New York

3942 Barnes Avenue, Bronx, New York

4006 Barnes Avenue, Bronx, New York

4008 Barnes Avenue, Bronx, New York

918 East 225th Street, Bronx, New York
4126 Bronxwood Avenue, Bronx, New York
4017 Paulding Avenue, Bronx, New York

*See* Voluntary Petition, Schedule A.

**3.** Debtor contends that he holds fee title to the following buildings:

}     U–Ton Buildings

}     Realty Buildings

tives of the debtor and Mercury (although not Mercury's counsel) appeared and were heard on debtor's request for entry of an order barring Mercury's collection activities pending a hearing on the motion. We entered such an order (the "March Order") and scheduled a hearing on the motion for April 7, 1995. At that hearing Mercury was represented by counsel who submitted a written objection to the motion just prior to the commencement of the hearing. In that objection, Mercury contends that U–Ton and Realty, not debtor, own the U–Ton and Realty Buildings. The hearing was adjourned to afford debtor an opportunity to respond to the objection. Mercury agreed that the March Order would remain in effect pending resolution of the motion.

### Discussion

■ The automatic stay of § 362 of the Code is intended to facilitate a debtor's reorganization and thereby promote the equitable distribution of the debtor's assets among its creditors, by providing a debtor breathing space from creditor claims during which to formulate a plan of reorganization. *See, e.g., In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 989 (2d Cir.1990), *cert. denied sub nom., Air Line Pilots Ass'n Int'l v. Shugrue,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re Petrusch,* 667 F.2d 297, 299 (2d Cir.1981), *cert. denied,* 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982). In relevant part, § 362(a) states that the filing of a chapter 11 petition automatically acts as a stay, applicable to all entities, of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Mercury contends that because debtor does not have a legal or equitable interest in the Realty and U–Ton Buildings, or the rents, issues and/or profits generated from the operation of those buildings, its collection activities are beyond the scope of § 362 of the Code and the motion must be denied. Debtor does not dispute that his motion should be denied if the subject rent is not property of his estate under § 541 of the Code. Whether the rent is property of the estate must be determined by reference to New York state law. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *Morton v. National Bank of New York City (In re Morton),* 866 F.2d 561, 563 (2d Cir.1989).

■ A corporation is "an artificial being, invisible, intangible, and existing only in contemplation of law." *Trustees of Dartmouth College v. Woodward,* 17 U.S. 518, 4 L.Ed. 629, 4 Wheat. 518 (1819). Because Realty and U–Ton are New York corporations, New York state law governs their affairs. *See First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation); *In re G & L Packing Co., Inc.,* 41 B.R. 903, 910 (N.D.N.Y.1984) (state law governs the affairs of a corporation). On or before March 15 of each year, every New York corporation liable to pay franchise taxes is required to make a "written report of its condition at the close if its business on the preceding December thirty-first, stating the amount of its authorized stock, the amount of stock paid in, the date and rate per annum of each dividend paid by it during the year ending with such day, the entire amount of the capital of such corporation, and the capital employed by it in [New York] state during such year." N.Y. Tax Law § 192(1). In the first instance, the state tax commissioner polices compliance with those provisions. On or before the last day of March, June, September or December in each calendar year, the tax commissioner may certify and transmit to the department of state a list of all such corporations that have failed to file their reports in the immediately preceding two years or that have failed to pay required taxes during that period. N.Y. Tax Law § 203–a(1). Thereafter, the "secretary of state shall make a proclamation under his hand and seal of office, as to corporations where names are included in such list ... declaring such corporations dissolved and their charters forfeited ...". N.Y. Tax Law § 203–a(3).

■ Because a private corporation can exist only to the extent provided by the law of the state or sovereignty by which it is

created, a corporation's dissolution ends its existence, except to the extent otherwise provided by statute or other applicable law. *See, e.g., Chicago Title & Trust Co. v. Forty-One Thirty–Six Wilcox Bldg. Corp.,* 302 U.S. 120, 125, 58 S.Ct. 125, 127, 82 L.Ed. 147 (1937); *see also Oklahoma Natural Gas Co. v. Oklahoma,* 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634 (1927) ("It is well settled that at common law and in the federal jurisdiction, a corporation which has been dissolved is as if it did not exist, and the result can not be distinguished from the death of a natural person in its effect"). Thus, to give effect to the equitable rule that the assets of a dissolved corporation are held for the benefit of its creditors and shareholders, state law includes provisions extending the life of a dissolved corporation to permit it to wind up its affairs. *See* Fletcher Cyc. Corp. § 8158 (Perm.Ed.). In New York, those provisions are contained in §§ 1005–1008 of the Business Corporations Law ("BCL"). They apply to a corporation dissolved by proclamation under N.Y. Tax Law § 203–a(3). *See* N.Y. Bus. Corp. Law § 1009; N.Y. Tax Law § 203–a(10). Accordingly, although New York law prohibits a dissolved corporation from engaging in new business, *see, e.g., Lorisa Capital Co. v. Gallo,* 119 A.D.2d 99, 506 N.Y.S.2d 62, 70 (1986); *Brandes Meat Corp. v. Cromer,* 146 A.D.2d 666, 537 N.Y.S.2d 177 (1989), it can act to the extent necessary to wind up its affairs. *See* N.Y. Bus. Corp. Law § 1005(a)(1); *see also Brady v. State Tax Commission,* 176 Misc. 1053, 29 N.Y.S.2d 88 (N.Y.Sup.Ct.1941), *aff'd* 263 A.D. 955, 33 N.Y.S.2d 384, *aff'd* 289 N.Y. 585, 43 N.E.2d 719 (N.Y.1942); *Lorisa Capital Co. v. Gallo,* 506 N.Y.S.2d at 70. The dissolved corporation retains the "power to fulfill or discharge its contracts, collect its assets, sell its assets at a public or private sale, discharge or pay its liabilities, and do all other acts appropriate to liquidate its business." N.Y. Bus. Corp. Law § 1005(a)(2). Moreover, the dissolution of a corporation does not "affect any remedy available to or against such corporation, its directors, officers or shareholders for any right of claim existing or any liability incurred before such dissolution...." N.Y. Bus. Corp. Law § 1006(b). A dissolved corporation remains responsible for its liabilities "until its affairs are fully adjusted." *Flute, Inc. v. Rubel,* 682 F.Supp. 184, 186 (S.D.N.Y.1988) (quoting *Rodgers v. Logan,* 121 A.D.2d 250, 503 N.Y.S.2d 36, 39 (1986) (citing cases)). Pending completion of the winding up, title to the assets of the dissolved corporation "shall remain in the corporation until transferred by it in its corporate name." N.Y. Bus. Corp. Law § 1006(a)(1). *See Rodgers v. Logan,* 503 N.Y.S.2d at 39 ("Until dissolution is complete, title to the corporate assets remains in the corporation." (citing BCL § 1006(a)(1)). *See also* N.Y. Bus. Corp. Law §§ 1005(a)(2), (3) (shareholders are not entitled to a distribution on account of their equity interests in dissolved corporation until corporation pays, or adequately provides for the payment of, all corporate liabilities.)

■ Debtor contends that when Realty and U–Ton were dissolved under Tax Law § 203–a, he automatically was vested with fee ownership of the U–Ton and Realty Buildings. That contention stems from his mistaken belief that the affairs of U–Ton and Realty need not be wound up. *Compare* N.Y.Bus.Corp.Law § 1009; N.Y.Tax Law § 203–a(10). It also ignores that the Second Circuit rejected a similar argument in *New Haven Radio v. Meister (In re Martin–Trigona),* 760 F.2d 1334 (2d Cir.1985). In that case, Martin–Trigona, the sole shareholder of New Haven Radio, Inc. ("Radio"), itself a chapter 11 debtor, sought to overturn a bankruptcy court sanctioned sale of Radio's assets. Prior to the filing of Radio's chapter 11 petition, the Connecticut Secretary of State declared Radio's charter forfeited pursuant to Conn.Gen.Stat. § 33–387. Instead of seeking to reinstate its corporate charter as permitted by Conn.Gen.Stat. § 33–388, Radio filed a voluntary chapter 11 petition. 760 F.2d at 1342. Martin–Trigona contended that the asset sale should be annulled because Radio was not properly a debtor under the Code. Among other things, Martin–Trigona argued that when Radio was dissolved by forfeiture it ceased to exist for any purpose, and that as sole shareholder, he automatically was vested with title to Radio's assets. *Id.* at 1341–42. The court found no merit to either contention. Under Connecti-

cut law, Radio had two options after its charter was forfeited. Either it could cure the defect giving rise to the forfeiture and seek reinstatement pursuant to Conn.Gen.Stat. § 33–388(a), or its affairs had to be wound up pursuant to §§ 33–379—380, with its assets being distributed first in satisfaction of the claims of creditors and then to the shareholder on account of his equity interest. The court held that by virtue of the winding up procedures, Radio's assets did not automatically vest in the shareholder when the corporate charter was forfeited. *See* 760 F.2d at 1342. It also held that because Connecticut's winding up provisions did not expressly prohibit a dissolved corporation from filing a chapter 11 petition, and because relief under chapter 11 was consistent with the plan and purpose of the Connecticut statute authorizing dissolution by forfeiture, Radio's chapter 11 petition was properly filed. *Id.* at 1341–43.

A corporation dissolved by proclamation under Tax Law § 203–a either can seek reinstatement, *see* N.Y.Tax Law § 203–a(7), or be wound up. *See* N.Y.Tax Law § 203–a(10); N.Y.Bus.Corp.Law § 1009. In *In re Cedar Tide Corp.,* 859 F.2d 1127, 1133 (2d Cir.1988), the court found that the Connecticut statutory scheme in issue in *Martin–Trigona* is substantially similar, although not identical, to that in Tax Law § 203–a. Accordingly, "[f]rom the statutory scheme in [New York], it is apparent, therefore, that there is no merit to [debtor's] claim that all the assets of [U–Ton and Realty] immediately passed to him as sole stockholder when the corporation[s] [were] dissolved [under Tax Law § 203–a]". *In re Martin–Trigona,* 760 F.2d at 1342. Under the Code, the term "property of the estate" is broadly defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). Because debtor has not shown that he has either a legal or equitable interest in the U–Ton and Realty Buildings, or the rents generated from the operation of those buildings, he has not established a right to the relief sought in the motion. *See United States W. Fin. Servs. v. Berlin (In re Berlin),* 151 B.R. 719, 724 (Bankr.W.D.Pa.1993) (automatic stay did not extend to real property which partnership had purported to transfer to debtor on eve of dissolution because the transfer agreements made no provision for satisfying debts owed partnership creditors; because partners have no right to partnership property until creditors have been satisfied, debtor could not thereby have acquired any interest in the real property).

In further opposition to the motion, Mercury contends that U–Ton and Realty are the real parties in interest and that each can secure the automatic stay's benefits by filing a bankruptcy petition under the Code, notwithstanding that each has been dissolved pursuant to Tax Law § 203–a. As support, it cites *In re Cedar Tide Corp.,* 859 F.2d 1127 (2d Cir.1988). In that case, the chapter 11 debtor was a New York corporation that had been dissolved by proclamation pursuant to Tax Law § 203–a(3). A creditor sought to dismiss the case on the grounds that the court lacked subject matter jurisdiction over the corporation by virtue of the fact that it had been dissolved. After determining that the relevant provisions of the BCL and Tax Law are substantially similar to the Connecticut statutes at issue in *In re Martin–Trigona,* the court applied the rationale of that case to deny the creditor's motion. *See* 859 F.2d at 1132–33.

■ Debtor contends that we should not follow *Cedar Tide* because that decision assumes that a dissolved New York corporation continues to exist for the limited purpose of winding up its affairs, *see* 859 F.2d at 1132, while *De George v. Yusko,* 169 A.D.2d 865, 564 N.Y.S.2d 597 (1991), holds that such a corporation ceases to exist for all purposes. Debtor has misread *De George.* In that case, defendant, the president and sole shareholder of Le Vison Care Products, Inc., entered into an agreement to sell plaintiff 39% of the outstanding shares of the corporation's stock for $40,000. *Id.* 564 N.Y.S.2d at 597. An addendum to that agreement further assured plaintiff management authority and that he would eventually attain the position of Le Vison's chief administrative officer. *Id.* at 598. Seven months after plaintiff and defendant executed the agreement, and plaintiff made a $10,000 down payment, the corporation's assets were liquidated at a

sheriff's sale. *Id.* Plaintiff sued to recover his down payment and defendant counterclaimed for the balance of the contract. *Id.* After learning through discovery that the corporation had been dissolved pursuant to Tax Law § 203–a for failing to pay its franchise taxes five years before the agreement was executed, plaintiff moved for summary judgment alleging that the agreement was unenforceable for lack of consideration. *Id.* The trial court denied his motion finding that a triable issue of fact existed as to whether the corporation had a *de facto* existence when the agreement was executed, due to the fact that Le Vison continued to do business and pay taxes post-dissolution. *Id.* The appellate division affirmed but for different reasons. It found that the triable issue of fact was whether the transfer of the corporation's accounts to an entity controlled by plaintiff, coupled with defendant's guarantee to plaintiff of future employment, constituted sufficient consideration to support their agreement. *Id.* In parting ways with the trial court's analysis, the court reiterated the well settled rule that a dissolved corporation is essentially legally dead and has no *de facto* existence. *Id.* Contrary to plaintiff's assertion, it did not hold that a dissolved corporation ceases to exist for all purposes. As noted above, the black letter law in New York is that a corporation dissolved by proclamation under Tax Law § 203–a is empowered to wind up its affairs. *De George* does not purport to challenge that. In any event, resolution of the issue of whether U–Ton and Realty are eligible to be debtors under the Code is inappropriate because neither entity is before us in this case. Moreover, it is irrelevant to our review of the merits of this motion.

### Conclusion

Based on the foregoing, debtor's motion is denied and the March Order is vacated.

SETTLE ORDER.