BRIARPATCH LIMITED, L.P. and
Gerard F. Rubin, Plaintiffs,

v.

D.M. THOMAS, D.H. Thomas Ltd.,
Briarpatch Film Corp., Robert M.
Geisler, Verner Simon, P.C. and Paul
W. Verner, Defendants.

No. 02 Civ. 10097(RWS).

United States District Court,
S.D. New York.

May 22, 2003.

Deyan R. Brashich, New York, NY, Barry L. Goldin, Allentown, PA, for Plaintiffs.

Blodnick Gordon Fletcher & Sibell, Westbury, NY, By: Jules Epstein, for Defendants D.M. Thomas and D.M. Thomas, Ltd., of counsel.

Verner Simon, P.C., New York, NY, By: Paul W. Verner, for Defendants Briarpatch Film Corp. and Robert M. Geisler, of counsel.

Kaufman, Borgeest & Ryan, New York, NY, By: A. Michael Furman, for Defendants Verner Simon and Paul W. Verner, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Briarpatch Limited, L.P. ("Briarpatch") and Gerard F. Rubin ("Rubin") (collectively, the "Plaintiffs"), have moved under 28 U.S.C. §§ 1332 and 1447 to remand this action against D.M. Thomas ("Thomas"), D.M. Thomas Ltd. ("DMT, Ltd."), Briarpatch Film Corp. ("BFC"), Robert M. Geisler ("Geisler"), Verner Simon, P.C. ("Verner Simon") and Paul W. Verner ("Verner") (collectively,

the "Defendants"), to the Supreme Court of the State of New York, County of New York ("State Court"). For the reasons set forth below, the motion is granted.

### Prior Proceedings

This action is part of the maelstrom of litigation that began in 1997 when Rubin acted upon the realization that his partners Geisler and John Roberdeau ("Roberdeau") since 1993 had violated their fiduciary duty to him. The following actions in this Court are some of those which resulted from that realization. *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623, 2002 WL 31426207, *1 (S.D.N.Y. Oct. 30, 2002). Related actions include *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 99 Civ. 9623; *Geisler v. Pate*, 01 Civ. 4767; *Briarpatch Ltd., L.P. v. Geisler*, 02 Civ. 1590; *Briarpatch Ltd., L.P. v. Thomas*, 02 Civ. 1591; *Geisler, v. Briarpatch Ltd., L.P.*, 02 Civ. 1592; *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 21203417, 03 Civ. 1382.

This particular action was commenced in the State Court on July 6, 2001, seeking a declaratory judgment with respect to *The White Hotel* Project. Geisler and others sought to imitate *The White Hotel* Project, which was an effort to produce as a movie *The White Hotel*, a novel written by Thomas. An amended complaint added Geisler, Verner Simon, and Verner as Defendants, alleging modestly thirteen causes of action as follows:

| Cause of Action | Defendant | Gravamen |
|---|---|---|
| First | Geisler and BFC | Breach of constructive trust |
| Second | Geisler and BFC | Breach of fiduciary duty |
| Third | Geisler | Tortious interference with performance of contract |
| Fourth | Geisler and BFC | Fraud/constructive fraud/fraudulent concealment |
| Fifth | Verner | Aiding and abetting breach of constructive trust/fiduciary duty |

| | | |
|---|---|---|
| Sixth | Verner | Conspiracy to breach constructive trust/fiduciary duty |
| Seventh | Verner | Aiding and abetting fraud/constructive fraud/fraudulent concealment |
| Eighth | Verner | Conspiracy to defraud and fraudulent concealment |
| Ninth | Verner | Deceit and collusion pursuant to New York Judiciary Law Sec. 487 |
| Tenth | DM Thomas | Aiding and abetting breach of constructive trust/fiduciary duty |
| Eleventh | DM Thomas | Conspiracy to breach constructive trust/fiduciary duty |
| Twelfth | Geisler, BFC, Verner, DM Thomas | Unjust enrichment |
| Thirteenth | DM Thomas | Declaratory judgment and injunctive relief |

On December 20, 2002, the Defendants removed the action to this Court and answers were filed. The motion to remand followed and was heard and marked fully submitted on April 2, 2003, together with motions in *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 Civ. 1382(RWS), in which the plaintiffs (the Defendants here) sought to enjoin the defendants (the Plaintiffs here) from interfering with *The White Hotel* Project.[1]

### The Parties

Briarpatch and Rubin are New York residents.

Thomas is alleged to be a citizen of the United Kingdom and BFC is a dissolved New York corporation. Geisler is a New York resident, Verner Simon is a New York law firm of which Verner, a New Jersey resident, is president.

### Fraudulent Joinder

■ The party seeking to remove plaintiffs' suit to federal court, bears "the burden of establishing that the requirements for diversity jurisdiction were met." *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir.2000); *Crazy Eddie, Inc. v. Cotter*, 666 F.Supp. 503, 508 (S.D.N.Y.1987) (same).

The notice of removal concedes that plaintiffs partnership and Rubin are residents of New York and that three defendants, Geisler, BFC, and Verner Simon, are New York residents.

■ This Court's March 26, 2002 opinion in *Briarpatch Ltd. v. Geisler Roberdeau*, 194 F.Supp.2d 246 (S.D.N.Y.2002), found that Rubin and Briarpatch are New York residents, as well as Geisler and BFC. However, the notice of removal alleges that each of the three New York Defendants have been fraudulently joined. However, a removing party asserting "fraudulent joinder" must demonstrate "by clear and convincing evidence" that either there has been "an outright fraud commit-

---

1. Characteristically, as in any well developed maelstrom, there are actions and counteractions. This action and *Night Hawk* raise the same underlying issues. An opinion in that mirror action is also being filed on this date.

ted in the plaintiff's pleadings" or "there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir.1998).

After the October 14, 1999 entry of the judgment in the State Court, it is alleged in the amended complaint that Geisler was required to deliver the agreements, correspondence, and other documents and also a full, complete and correct accounting to Briarpatch and Rubin with respect to, among other things, *The White Hotel* Project. It is further alleged that Geisler is required to remain a constructive trustee and fiduciary to Briarpatch and Rubin, until he provides that accounting, and that he remains barred from diverting, converting, or usurping for himself any opportunity in which Briarpatch had an interest. *See Dunay v. Ladenburg, Thalmann & Co., Inc.*, 106 A.D.2d 318, 319, 483 N.Y.S.2d 234 (1st Dep't 1984) ("[A] breach of a fiduciary duty is a continuing one and survives the dissolution of a joint venture.").

It is also alleged that Geisler has violated his duties by subsequent withholding of agreements, correspondence, and other documents with respect to *The White Hotel* Project. This is based in part on a fraudulent bankruptcy filing for Geisler Roberdeau; communications and arrangements with Thomas, whereby Geisler sought to produce the project and to divert rights to that project for himself and for his company Night Hawk, resulting in its agreement dated July 11, 2001 with Thomas for diversion of the rights to *The White Hotel;* and his efforts to raise funds for himself from and divert opportunities to produce *The White Hotel* Project, using the Dennis Potter screenplays.

■ Under applicable New York law, the Plaintiffs may seek to pursue Geisler for contempt and concurrently proceed against him by this action for damages. *Jos. Riedel Glass Works, Inc. v. Francis W. Kurtz & Co., Inc.*, 260 A.D. 163, 20 N.Y.S.2d 938 (1st Dep't 1940), *aff'd in part*, 287 N.Y. 636, 39 N.E.2d 270 (1941) (in which the third party was adjudged in contempt and fined per § 773 of the Judiciary Law, and a separate action was maintained for damages). The court in the *Glass Works* case held that a separate or concurrent action for damages could be so maintained even in a case where contempt was the proceeding authorized by the statute. It explained that § 773 is "an express recognition of the fact that the provision for proceedings for contempt was not intended to be in any way a substitute for the right to proceed by action, but was intended to be a concurrent remedy." *Id.* at 168, 20 N.Y.S.2d 938.

The Defendants have contended in the notice of removal that BFC has been fraudulently joined because BFC was dissolved, is an admitted "alter ego" of Geisler and so "equally liable for those actions currently pending in state court," and the amended complaint "is based on exactly the same facts as alleged in the complaint and/or encompassed by the continuing injunction in the Original Action." '

■ Although BFC was dissolved by proclamation in 1993, it has continued to conduct business, and so may be sued with respect thereto. N.Y. Bus. Corp. Law 1006(a)(4) permits a dissolved corporation to be "sued in all courts" and "process may be served by or upon it." [2]

---

**2.** Per N.Y. Bus. Corp. Law § 1006(a)(4):
(a) A dissolved corporation ... may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place ... In particular, and without limit-

BFC's dissolution does not insulate it from liability for its post-dissolution misconduct. To find otherwise would permit a dissolved company to engage in misconduct without remedy against it. *See Boyd, Weir & Sewell, Inc. v. Fritzen–Halcyon, Lijn, Inc.,* 709 F.Supp. 77 (S.D.N.Y.1989) (holding that diversity was lacking as the dissolved defendant corporation was located in and transacting business out of New York); *Flute, Inc. v. Rubel,* 682 F.Supp. 184, 187 (S.D.N.Y.1988) ("[A] corporation no longer in existence remains responsible for its liabilities 'until its affairs are fully adjusted.'") (*quoting Rodgers v. Logan,* 121 A.D.2d 250, 503 N.Y.S.2d 36, 39 (1st Dep't 1986)).

■ BFC was one of three defendants to the initial complaint. That BFC has now admitted to being an "alter ego" of Geisler does not preclude actions against either or both of them, as it is alleged that BFC was assigned Geisler's rights to the motion picture rights agreement. The defenses of BFC and Geisler may differ, and BFC and Geisler may have different assets available to satisfy a judgment creditor.

The BFC misconduct alleged in the amended complaint occurred after the October 14, 1999 entry of judgment in the original action; the amended complaint's claims are different from the claims in the original action; and the relief sought in the amended complaint seeks, among other things, damages of at least $4.2 million against BFC with respect to post-judgment misconduct as to *The White Hotel.*

■ The notice of removal contends that Verner Simon has been fraudulently joined as (i) it "was not formed until after the reversion of literary right to *The White*

*Hotel* to the author DM Thomas under the Motion Picture Rights Agreement described in the Amended Complaint," and (ii) "there is no theory of law whereby the professional corporation can be held accountable for the intentional torts, conspiracy, aiding and abetting, collusion, etc. of the individual Paul W. Verner."

According to the Plaintiffs, the rights to *The White Hotel* have not reverted to Thomas, and they seek a declaratory judgment to that effect because the exercise of Briarpatch's rights were frustrated and prejudiced by Defendants' misconduct, which has rendered the partnership unable to develop or produce the picture, thus barring the reversion claimed by the Defendants.

The Thirteenth Cause of Action seeks a declaratory judgment that all rights diverted by Defendants, such as rights diverted through Night Hawk in the July 11, 2001 agreement with Thomas, are held on behalf of and in constructive trust for and belong to Briarpatch.

After Verner Simon's July 13, 2001 incorporation in New York, the Plaintiffs allege that it joined and participated in the scheme whereby Geisler and BFC breached their duties as constructive trustees, fiduciaries, and otherwise to the partnership and Rubin, and diverted, converted, and otherwise misappropriated rights, opportunities, and remuneration belong to the partnership and Rubin with respect to *The White Hotel* Project. They allege it became a proper defendant in light of its involvement as perpetrator, aider and abettor, and conspirator in the alleged scheme and misconduct.

---

ing the generality of the foregoing ... (4) The corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative,

arbitrative or otherwise, in its corporate name, and process may be served by or upon it.

■ Contrary to the notice of removal, a corporation (whether or not a professional corporation) can be held liable for intentional and other misconduct by its principal. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755–56, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998):

> Section 219(1) of the Restatement [ (Second) of Agency] sets out a central principle of agency law:
>
>> A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
>
> An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his employment.

Per *Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 378, 502 N.Y.S.2d 965, 969–70, 494 N.E.2d 70 (1986):

> punitive damages can be imposed on an employer for the intentional wrongdoing of its employees ... where management has authorized, participated in, consented to or ratified the conduct giving rise to such damages ... or the wrong was in pursuance of a recognized business system of the entity. Put another way, the "complicity rule"—in essence the position adopted by the Restatement (Second) of Torts § 909 and the Restatement (Second) of Agency § 217C— results in employer liability for punitive damages ... when a superior officer in the course of employment orders, participates in, or ratifies outrageous conduct.

(citations omitted).

Here, the misconduct alleged was perpetrated with and evidenced by monies paid and filings in the name of Verner Simon P.C. signed by its principal Paul W. Verner. Verner Simon is alleged to be liable for that intentional and other misconduct perpetrated in its name by its principal.

Without resolving the underlying issue, it cannot be demonstrated.

The Defendants maintain that all post-judgment conduct by Geisler alleged in the amended complaint is presently the subject of a contempt proceeding in the State Court, limited to Geisler's violation of the January 2002 contempt order and thus limited to Geisler's failure to deliver documents relating to *The White Hotel* and other projects and to pay the previously ordered contempt sanctions of $50,000, and to deliver the court-ordered accounting. According to the Plaintiffs, that contempt hearing will not encompass development of *The White Hotel* Project.

The Second Circuit has held in *Curtis v. Citibank*, 226 F.3d 133, 139 (2d Cir.2000) that assertion of claims arising after the initial action was not precluded. It wrote:

> While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996). The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims. *See id.*

Likewise, in *SEC v. First Jersey Sec. Inc.*, 101 F.3d at 1464, the court held that a prior SEC action did not preclude SEC charges in a second action, as the violations on which that second action was based had not yet occurred at the time the SEC filed its initial charges:

> If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion. For example, when a con-

tract was to be performed over a period of time and one party has sued for a breach but has not repudiated the contract, *res judicata* will preclude the party's subsequent suit for any claim of breach that had occurred prior to the first breach-of-contract suit, but will not preclude a subsequent suit for a breach that had not occurred when the first suit was brought.

(citations omitted).

*See also St. Pierre v. Dyer,* 208 F.3d 394, 400 (2d Cir.2000) (prior judgment not preclusive as to claims not previously adjudicated as they arose after and thus could not have been adjudicated in prior action); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir.1997) (no claim preclusion where second action concerns a transaction occurring after the commencement of prior action).

 The "prior action pending" doctrine prevents proceeding in federal court with a second lawsuit which is duplicative of an earlier pending lawsuit over the same subject matter. *Curtis v. Citibank,* 226 F.3d at 138. Application of the "other suit pending" doctrine requires there be "the same rights asserted and the same relief prayed for" and the relief "must be founded upon the same facts." *The Haytian Republic,* 154 U.S. 118, 123–24, 14 S.Ct. 992, 38 L.Ed. 930, (1894), *cited by Howard v. Klynveld Marwick Goerdeler,* 977 F.Supp. 654, 664 (S.D.N.Y.1997) and *Curtis v. DiMaio,* 46 F. Supp.2d 206, 215 (E.D.N.Y.1999). If as claimed by Defendants the instant action is duplicative as to Geisler or BFC, it would be dismissable on that ground, were jurisdiction to exist. The issue is best resolved by remand.

The joinder of Geisler, BFC, and Verner Simon is based upon acts alleged to have been performed post-judgment in the State Court. Such a joinder is not fraudulent.

*Conclusion*

In the absence of diversity and the failure of the Defendants to establish fraudulent joinder, the motion to remand this action to the State Court is granted.

It is so ordered.