16-1260-cv
*Next Millenium Realty, LLC v. Adchem Corp., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11ᵗʰ day of May, two thousand seventeen.

PRESENT:    DENNY CHIN,
            RAYMOND J. LOHIER, JR.,
                    *Circuit Judges*,
            COLLEEN McMAHON,
                    *Chief District Judge.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NEXT MILLENIUM REALTY, LLC,
                    *Plaintiff-Counter-Defendant-Cross-*
                    *Defendant-Appellant*,

101 FROST STREET ASSOCIATES,
                    *Plaintiff-Counter-Defendant-Third-Party-*
                    *Plaintiff-Cross-Claimant-Cross-Defendant-*
                    *Consolidated-Defendant-Appellant*,

STATE OF NEW YORK,
                    *Consolidated-Plaintiff-Counter-Defendant-*
                    *Cross-Defendant*,

---

[*]     Chief Judge Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

DENISE M. SHEEHAN,

        *Consolidated-Plaintiff-Cross-Defendant,*

        v.                        16-1260-cv

ADCHEM CORP., LINCOLN PROCESSING CORP.,
NORTHERN STATE REALTY CORP., NORTHERN
STATE REALTY COMPANY, PUFAHL REALTY
CORPORATION,

        *Defendants-Third-Party Defendants-Cross-*
        *Defendants-Counter-Claimants-Cross-*
        *Claimaints-Third-Party-Plaintiffs-Appellees.*[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


FOR APPELLANTS:               KEVIN MALDONADO, Kevin Maldonado &
                                 Partners LLC, Windham, New York.

FOR APPELLEES:                DANIEL RIESEL (Dan Chorost, Edward K.
                                 Roggenklamp, IV, *on the brief*), Sive, Paget &
                                 Riesel, P.C., New York, New York.

        Appeal from the United States District Court for the Eastern District of

New York (Lindsay, *M.J.,* and Brown, *M.J.*).

        **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

        Plaintiffs-appellants Next Millenium Realty, LLC ("Next Millenium") and

101 Frost Street Associates ("101 Frost Street," and, together with Next Millenium,

"plaintiffs") appeal from a judgment of the district court entered March 29, 2016,

---

[*] The Clerk of the Court is directed to amend the official caption in accordance with the above.

dismissing their claims against defendants-appellees Pufahl Realty Corp. ("Pufahl"), Northern State Realty Corp. ("NSR Corp."), Northern State Realty Co. ("NSR Co."), Lincoln Processing Corp. ("Lincoln"), and Adchem Corp. ("Adchem") (collectively, "defendants").  Plaintiffs challenge three of the district court's rulings: (1) the October 22, 2014 Memorandum and Order granting defendants' motion for partial summary judgment; (2) the March 31, 2015 Memorandum and Order granting in part and denying in part defendants' motion for partial summary judgment; and (3) the March 23, 2016 Memorandum and Order granting defendant Lincoln's motion for summary judgment.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This Court reviews a grant of summary judgment *de novo*, construing all evidence and drawing all reasonable inferences in favor of the non-moving party.  *See New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 206 (2d Cir. 2006).

A.   Factual Background

This case arises from the cleanup of perchloroethylene ("PCE") spilled at 89 Frost Street, in Westbury, New York (the "Site").  In 1988, the New York State Department of Environmental Conservation ("NYSDEC") listed the Site as a Class 2 Inactive Hazardous Waste Site.  *See State of New York v. Next Millenium Realty*, LLC, 732 F.3d 117, 121-22 (2d Cir. 2013).  The primary cause of the PCE spill, which contaminated the groundwater, was a fire set by an employee of the sublessee of the Site.   Although

Next Millenium and 101 Frost Street did not cause the spill, they were required to pay for the cleanup as owners. They commenced this action below under sections 107 and 113(f)(3)(B) and (g)(2) of the Comprehensive Environmental Remediation, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(f)(3)(B) and (g)(2), seeking payment for past and future response costs. They also asserted a state law nuisance claim. Third-Am. Compl. ¶ 1. Plaintiffs allege that defendants are private potentially responsible parties ("PRPs") liable for the costs of the cleanup because they were either prior owners or operators of the Site.

On April 1, 1966, the owner of the Site, Jerry Spiegel, leased the Site to Pufahl (the "Lease"). From 1966 to 1976, Joseph, Herman, and Charles Pufahl (the "Pufahl Brothers") owned and managed, as officers, the following companies: (1) Pufahl; (2) NSR Corp.; (3) NSR Co.; (4) Lincoln; and (5) Adchem.

From August 1966 to 1973, Pufahl subleased the Site to Lincoln, a textile producer. On May 21, 1973, Pufahl, which had changed its name to NSR Corp., assigned the Lease to NSR Co.[1] In May 1973, NSR Co. entered into a sublease with 89 Frost Leasing Corp., an affiliate of Marvex Processing and Finishing Corp. ("Marvex").

Between 1973 and 1976, Marvex occupied the building and operated textile manufacturing activities at the Site pursuant to the sublease. Marvex installed a commercial dry cleaner, which used large quantities of PCE and may have caused PCE

---

[1] NSR Corp. then dissolved.

contamination during daily operations. In May 1976, an employee of Marvex committed arson and burned the Site to the ground, causing PCE contamination. As a result, on June 24, 1976, Spiegel terminated the Lease and asked Marvex to vacate the premises. Speigel chose not to rebuild the Site at that time.

In July 1976, NSR Co. sued Spiegel and Allendale Mutual Insurance ("Allendale"), the fire insurance provider for the Site, seeking (1) a declaration that the purchase option had not been terminated or (2) an order requiring Allendale to pay insurance proceeds either to NSR Co. or Spiegel, with the stipulation that Spiegel rebuild the Site. In May 1977, the parties settled. Under the settlement agreement, Allendale agreed to issue the fire insurance proceeds to Spiegel, and Spiegel and his successors agreed to release Pufahl, the Pufahl Brothers, NSR Co., NSR Corp., Lincoln, and Adchem from liability from all claims "arising out of [the Lease]." App. 486. In 1978, using the insurance proceeds, Spiegel rebuilt the Site, and re-let the property.

After PCE contamination was discovered on the Site in 1988, the NYSDEC listed the Site as a Class 2 Inactive Hazardous Waste Site. Next Millenium and 101 Frost purchased the property in 1997 or 1998. On January 2003, the plaintiffs voluntarily entered into Consent Decrees with NYSDEC to remediate the Frost Street Properties. Plaintiffs have spent more than $10 million pursuant to the Consent Decree on the cleanup.

B.       Proceedings Below

Plaintiffs filed suit on November 24, 2003 in the United States District Court for the Eastern District of New York, alleging that defendants are liable under CERCLA as "owners" and "operators."  Third Am. Compl. ¶ 7.  On October 22, 2014, the district court (Lindsay, *M.J.*) denied plaintiffs' motion for partial summary judgment and granted defendants' cross-motion for partial summary judgment, holding that Lincoln and Adchem were not "owners" of the Site.[2]  On March 31, 2015, the district court granted in part and denied in part defendants' motion for summary judgment, holding that Lincoln and Adchem were not liable based on a single enterprise theory. The court also rejected the common law nuisance claim and granted the motion to strike the jury demand.  On March 23, 2016, the district court (Brown, *M.J.*) granted Lincoln's "motion in limine to dismiss," dismissing all claims again Lincoln as "operators."[3]  App. 83, 88.  On March 29, 2016, a final judgment was entered in favor of all defendants dismissing all pending causes of action, and denying plaintiffs' motion for partial summary judgment.  This appeal followed.

---

[2] The parties consented to jurisdiction before the magistrate judge pursuant to 28 U.S.C. § 636.

[3] On May 4, 2015, the case was transferred from Magistrate Judge Lindsay to Magistrate Judge Gary Brown.

C.   Discussion

1.   CERCLA

Congress created CERCLA to address the cleanup of hazardous waste spills by imposing strict liability on "any person who at the time of disposal of any hazardous substance *owned* or *operated* any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(1)-(2) (emphasis added). Owners and operators are subject to strict liability unless they can prove an affirmative defense. *See B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992). Liability extends to current owners even though they did not cause the pollution. *See New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir. 1985) ("[S]ection 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation.").

CERCLA is a remedial statute that "must be construed liberally to effectuate its two primary goals: (1) enabling the EPA to respond efficiently and expeditiously to toxic spills, and (2) holding those parties responsible for the releases liable for the costs of the cleanup." *B.F. Goodrich Co.*, 958 F.2d at 1198; *see also Prisco v. A&D Carting Corp.*, 168 F.3d 593, 602 (2d Cir. 1999) (citing *Schiavone v. Pearce*, 70 F.3d 248, 253 (2d Cir. 1996) ("As a remedial statute, CERCLA should be construed liberally to give effect to its purposes.")).

Plaintiffs allege claims under section 107(a) and section 113(f) of CERCLA.[4] They contend that: (1) Pufahl, NSR Co., NSR Corp. and Adchem are liable as "owners" based on the sublease with their sublessees Lincoln and Marvex because they are *de facto* owners or under a site control theory of ownership; (2) Pufahl, NSR Co., NSR Corp. and Adchem are liable as "owners" based on a "single enterprise" theory because the defendants acted as a "single enterprise" with the sublessees; and (3) Lincoln is liable as an "operator" because its operations purportedly caused the PCE contamination.

2.     Application

a.     Owner Liability

As an initial matter, plaintiffs ask that we overrule *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 329 (2d Cir. 2000), in which we laid out the circumstances under which a lessee is deemed an owner under CERCLA. The request is denied. This panel does not have authority to overrule the prior panel decision in *Commander Oil*. *See United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004) ("[Second

---

[4] Section 107(a) permits a property owner or operator who has spent money on cleaning up hazardous waste to seek reimbursement for cleanup costs from other PRPs. *See* 42 U.S.C. § 9607(a)(4)(B). Section 113(f) permits anyone to "seek contribution from any other person who is liable or potentially liable under [section 107(a)]." 42 U.S.C. § 9613(f). Under Section 113(f), a party who has been sued to contribute to cleanup costs can seek contribution from other PRPs for cleanup costs, including from the initial plaintiff who sued for reimbursement under section 107(a).

Circuit panels] are bound by the decisions of prior panels until . . . they are overruled either by an en banc panel of our Court or by the Supreme Court.").

*Commander Oil* remains the law of this Circuit. Under *Commander Oil*, as the district court noted, the lease here was "a typical commercial lease reflecting the usual relationship between a landlord and a single industrial tenant." Hence, on this record, defendants were not liable as *de facto* owners under CERCLA.

Plaintiffs argue that if defendants are not liable as *de facto* owners under *Commander Oil*, we should adopt a site control test to determine liability. In *Commander Oil*, however, we expressly declined to adopt a site control standard for ownership. We held that "site control alone is an improper basis for the imposition of owner liability." 215 F.2d at 329. We reasoned that "while the imposition of liability [where the lessee is the active user and polluter] is surely correct, imposing *owner* liability instead of *operator* liability threatens to conflate two statutorily distinct categories of potentially responsible parties." *Id.* Again, *Commander Oil* controls in this respect as well, and hence this argument fails.

b.    Operator Liability Based on a "Single Enterprise" Theory

Plaintiffs also argue that defendants are liable for Lincoln's manufacturing operations on the Site between 1966 and 1973 on the theory defendants operated as "a single enterprise" under the domination and control of the Pufahl Brothers, who owned and controlled Lincoln. Under the "single enterprise theory," a corporation can be held

liable for the actions of another corporation if they are part of a single enterprise. *See N.L.R.B. v. Deena Artware, Inc.,* 361 U.S. 398, 403 (1960)**.**

Under New York law, liability will be imposed upon a parent corporation through veil piercing where a plaintiff shows: (1) the parent corporation dominates the subsidiary in such a way as to make it a "mere instrumentality" of the parent; (2) the parent company exploits its control to commit a fraud or other wrong, and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud or wrong. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,* 933 F.2d 131, 138 (2d Cir. 1991). In CERCLA cases, plaintiffs must also show that domination caused the contamination at the site. *See New York State Elec. & Gas Corp. v. FirstEnergy Corp.,* 766 F.3d 212, 228 (2d Cir. 2014) ("The use of control to commit a wrong is a key component to veil piercing."); *Bedford Affiliates v. Sills*, 156 F.3d 416, 431-32 (2d Cir. 1988). Domination and control alone are not enough to support veil-piercing. *New York State Elec. and Gas*, 766 F.3d at 228 (citing *Bedford Affiliates*, 156 F.3d at 431).

Here, plaintiffs failed to present evidence from which a reasonable factfinder could conclude that defendants' alleged domination or control of Lincoln caused the contamination at the Site. Any contamination caused by Lincoln would have arisen from its daily operations at the Site. There is nothing in the record to suggest that defendants directed or controlled Lincoln's daily operations in such a way as to cause contamination.

As for Marvex, the wrongdoing that allegedly caused the pollution involved an act of arson by an employee of Marvex. There is nothing in the record to support the proposition that defendants' alleged domination of Lincoln caused the Marvex spill. Thus, plaintiffs' single enterprise claims fail.

        c.     <u>Lincoln</u>

Plaintiffs argue that Lincoln is liable as an "operator" based on its operations at the Site between 1966 and 1973. Lincoln, however, had ceased operations by 1972 or 1973, several years before the fire in 1976, and it was dissolved well before the claims accrued in 1997 or 1998, when Next Millenium purchased the Site.

Whether a corporation has the capacity to be sued is a question of state law. *See Marsh v. Rosenbloom*, 499 F.3d 165, 179 (2d Cir. 2007) ("CERCLA does not preempt state statutes that limit a party's capacity to be sued."). In New York, this question is governed by New York Business Corporation Law ("BCL") §§ 1005 and 1006. Section 1005(a)(1) provides that a dissolved corporation "shall carry on no business except for the purpose of winding up its affairs." BCL § 1005(a)(1). Section 1006(a) provides that a dissolved corporation "may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place." BCL § 1006(a). An aggrieved party, however, may seek "any remedy available to or against such [dissolved] corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such

dissolution." *Id.* § 1006(b). Thus, the dissolved corporation exists for "the purpose of and for as long as is necessary to satisfy and provide for its debts and obligations and it may sue or be sued on these obligations until its affairs are fully adjusted." *Rodgers v. Logan*, 503 N.Y.S.2d 36, 39 (App. Div., 1st Dep't 1986).

Plaintiffs argue that defendant's affairs were not "fully adjusted" at the time they filed suit in 2003 because Section 1006 provides no time limit on winding up a corporation's affairs. This is not correct. While Section 1006 is silent on time limits, New York courts have held that where there is no stated time limit, the wind up period is limited to a "reasonable period of time." *See Lance Int'l, Inc. v. First Nat'l City Bank*, 927 N.Y.S.2d 56, 58 (App. Div. 1st Dep't 2011). The winding up "cannot continue indefinitely." *Id.*

Here, Lincoln ceased operations in 1972 or 1973, and dissolved in approximately 1977. There is nothing in the record to show that Lincoln -- which has not conducted business since 1977 -- had not fully adjusted its affairs by 1997, when plaintiffs purchased the property, or by 2003, when this suit was filed. The district court reasonably concluded that Lincoln's operations were "wound up" and its affairs fully-adjusted long before plaintiffs commenced this action.

\*　　\*　　\*

We have reviewed the plaintiffs' remaining arguments on appeal and conclude they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

                    FOR THE COURT:
                    Catherine O'Hagan Wolfe, Clerk